UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY REYNOLDS, a/k/a
L.J. REYNOLDS,

        Plaintiff,                      Case No. 12-cv-11664

                                                Paul D. Borman
v.                                        United States District Judge

SANDRA BANKS and JOHN DOES 1-10,
jointly and severally,

        Defendants.
_____/

<u>OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF (DKT. NO. 7)</u>

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction. (Dkt. No. 7.) Defendant Sandra Banks ("Banks") initially refused to accept service of process of Plaintiff's Complaint or Motion. The Court held a hearing on Plaintiff's motion on Friday, May 11, 2012, and Banks did appear, along with John Doe Defendants Willie Ford and Harley Brown. Following that hearing, the Court entered a Stipulated Stand Still Order directing all parties to refrain from interfering with any other parties' use of the contested mark "The Dramatics," until further Order of this Court. The hearing on Plaintiff's motion for preliminary injunctive relief was rescheduled for Wednesday, May 30, 2012 at 4:00 p.m., to permit Defendants an opportunity to retain counsel and formulate a response to the motion for preliminary injunctive relief.

On May 30, 2012, counsel for Defendants filed an appearance and the Court issued a new hearing date and briefing schedule on the motion to permit Defendants' new counsel an opportunity

1

to respond to Plaintiff's motion. (Dkt. No. 15, Notice of Hearing.) On June 8, 2012, as directed by the Court in its May 30, 2012 Notice, Defendants filed a brief in response to the Plaintiff's motion for preliminary injunctive relief. (Dkt. No. 16.) By Order of this Court, Plaintiff's reply in support of his motion for a preliminary injunction was due on June 13, 2012. On Friday, June 15, 2012, at 3:19 p.m., Plaintiff filed his reply brief, which the Court notes was untimely and in violation of the local rule limiting the length of a reply brief to five (5) pages. *See* E.D. Mich. L.R. 7.1(d)(3).

For the reasons that follow, the Court DENIES Plaintiff's request for preliminary injunctive relief and continues in effect the Stand Still Order issued by this Court on May 11, 2012, which prohibits the Plaintiff and each of the Defendants from interfering with or in any way disparaging the other parties' use of the mark "The Dramatics" while this case proceeds. (Dkt. No. 12.)

I. **BACKGROUND**

This matter involves contested rights to exclusive use of the name "The Dramatics." The Dramatics are a "legendary soul/pop/rhythm & blues vocal group." (Dkt. No. 7, Pl.'s Motion for Preliminary Injunction 1.) According to Plaintiff's pleadings, he began performing with The Dramatics as "lead" singer in 1972. *Id.* According to Defendants, Plaintiff began to perform with the group in 1973, after the group had already recorded "its most popular hits," "Whatcha See Is Whatcha Get" and "In The Rain." (Dkt. No. 16, Defs.' Resp. 1.) At the Court hearing on May 11, 2012, Plaintiff's counsel did not contest the fact that Plaintiff was not one of the original "Dramatics." Plaintiff alleges that the group ceased performing for a period of years, 1980-1986, but were reunited through Plaintiff's efforts sometime in 1986. (Dkt. No. 7, Pl.'s Mot. 3.) Plaintiff further alleges that in February, 2012, Plaintiff and fellow Dramatic members Winzell Kelly, Donald Albert and Willie Ford were the subject of a three-segment 30-minute taped interview released on

2

The Rock and Roll Hall of Fame website. *Id.*

Defendant Sandra Banks is the widow of original Dramatics member Ron Banks. Ron Banks died suddenly on March 4, 2010. (Compl. ¶ Intro.) Immediately after Ron Banks' death, Plaintiff alleges, Defendant Sandra Banks began to claim sole ownership of the Dramatics and began to advertise and to hold herself out as the manager of the Dramatics. *Id.* ¶¶ 6-10.

Plaintiff alleges that Defendants have attempted to shut down Plaintiff's website and Facebook page and have contacted venues where Plaintiff has been scheduled to perform with his Dramatics group, and represented to others that Plaintiff was no longer a member of the group, attempting to intimidate the agents at the venues and dissuade them from permitting Plaintiff to perform. *Id.* at ¶ 11; Exs. 11A, 12. Media statements on or around April, 2012, appear to confirm circulation of the message that Plaintiff had been removed from his position as manager and lead singer of the Dramatics and that Defendant Sandra Banks had taken control of the group and was threatening trademark infringement action against anyone else performing under the group name. (Pl.'s Mot. Ex. 7.) The media statements indicated that Willie Ford was the new lead singer of the Dramatics, under the management of Defendant Sandra Banks, Ron Banks' widow. At the hearing in this Court on May 11, 2012, Defendant Willie Ford admitted to the Court that he was responsible for the disparaging comments and various negative representations that Plaintiff complains of in his Complaint.

Plaintiff alleges that he was also a manager, along with Ron Banks, of a Michigan LLC, "The Dramatics LLC," which, according to Plaintiff, was formed and filed Articles of Organization with the Michigan Department of Labor and Economic Growth in December, 2008. Plaintiff states that The Dramatics LLC has filed Annual Statements with the Michigan Department of Licensing and

3

Regulatory Affairs since it was formed in 2008 and that he (Reynolds) served as the LLC's Resident Agent. (Pl.'s Mot. Ex. 5; Compl. Exs. 5-10.) Plaintiff asserts that he and Ron Banks were the sole managers of the Dramatics LLC, as evidence by a December 5, 2008 Operating Agreement executed by both Plaintiff and Ron Banks. (Pl.'s Mot. Ex. 6.)[1]

Defendants offer a different version of events surrounding the formation of the group and the legal interests of the various members of the group in the name "The Dramatics." (Dkt. No. 16, Defs.' Resp. 1-5.) Defendants offer the transcript of a 1973 hearing in Wayne County Circuit Court before the Honorable James L. Ryan,[2] in a case in which Defendant in the instant case, Willie Ford, along with the now-deceased Ron Banks and Larry Demps, as members of the group "The Dramatics," sought to enjoin former Dramatics members William Howard and Elbert Wilkins from using the name "The Dramatics." (Dkt. No. 20, Defs.' Resp., Replacement Ex. 4, Transcript of December 5, 1973 Hearing) ("1973 Hr'g Tr."). In his findings of fact and conclusions of law, Judge Ryan found that the five members had formed an unwritten partnership and that the name "The Dramatics," was an asset and property of that partnership. *Id.* at 4. Judge Ryan further found that

---

[1] Interestingly, although Plaintiff claims to have filed Articles of Incorporation and filed Annual Statements for the "The Dramatics LLC," the LLC that Plaintiff claims was formed via the 2008 Operations Agreement, the actual filings attached to Plaintiff's Complaint indicate that Articles and Annual Statements were filed for "Dramatics the Singing Group LLC," which was formed based on the 2007 Operations Agreement to which Defendant Ford was a signatory. Plaintiff provides no evidence of Annual Statements filed on behalf of "The Dramatics LLC," the entity allegedly formed without Ford in 2008. Plaintiff attempts to pair up the December 4, 2007 Articles of Incorporation for the "Dramatics the Singing Group LLC" with the December 5, 2008 Operations Agreement signed only by Plaintiff and Banks. (Compl. ¶ 25.) However, Defendants introduction into evidence of the November 30, 2007 Operations Agreement, signed by Plaintiff, Banks and Ford, casts serious doubt on Plaintiff's allegation that the December 4, 2007 Articles of Incorporation were based upon the subsequently-executed December 5, 2008 Operations Agreement.

[2] Judge Ryan recently retired after a distinguished career as a Justice of the Michigan Supreme Court and a member of the United States Court of Appeals for the Sixth Circuit.

when Howard and Wilkins withdrew from the group in 1973, the partnership was dissolved by operation of law. *Id.* at 5. Finally, Judge Ryan concluded that: "[U]pon dissolution of the partnership, the title, "The Dramatics," the name sometimes called service mark, "The Dramatics," not having been disposed of upon dissolution, is the property of the partners in common and belongs to each of them with the right to use it in common, but not to the exclusion of the other partners." *Id.* at 5. Judge Ryan denied the plaintiffs' request for preliminary injunctive relief, which was premised upon a claim to exclusive use of the name "The Dramatics." *Id.* at 6.

As Defendants correctly observe, Plaintiff Reynolds was not a party to the 1973 action and was not adjudged at that time to have any rights in the name "The Dramatics." Defendant Ford, in his affidavit, explains that after the conclusion of the 1973 lawsuit, he, Banks and Demps entered into an agreement with Howard and Wilkins to buy out the latter two members's interest in the name "The Dramatics." (Dkt. No. 19, Defs.' Resp. Amended Ex. 2, June 11, 2012 Affidavit of Willie Ford ¶ 5.) This version of events is corroborated by the sworn affidavit of Don Davis, who was the former president and owner of Groovesville Production, Inc., an entity that produced musical recordings in the City of Detroit in the 1960's through the 1980's and who produced under contract for "The Dramatics." (Dkt. No. 19, Defs.' Resp. Amended Ex. 5, June 11, 2012 Affidavit of Don Davis ¶¶ 1-3.) Davis states in his affidavit that only Ron Banks, Willie Ford and Larry Demps were under contract with Groovesville as official members of the group and that Plaintiff Reynolds was one of the performers with The Dramatics during this time but was under a separate contract with Groovesville. *Id.* at ¶¶ 5-6. Ford states in his affidavit that he has never sold or assigned his ownership interest in the name "The Dramatics." (Ford. Aff. ¶ 7.)

Mr. Ford testifies in his affidavit that in 2007, he entered into an Operations Agreement with

5

Plaintiff Reynolds and Ron Banks which was supposed to organize the business of a limited liability company (LLC) that Plaintiff was supposed to set up. (*Id.* ¶ 8; Defs.' Resp. Ex. 7, November 30, 2007 Operations Agreement (the "2007 Operations Agreement").) The 2007 Operations Agreement was executed by Plaintiff Reynolds, Defendant Willie Ford and Ronald Banks and provided that "[t]he name The Dramatics will be equally owned and used by each member regardless of who acts as the registering agent." The 2007 Operations Agreement further provides that any action performed by a member that is not disclosed to the other members is action taken outside the scope of the Agreement. (Defs.' Resp. Ex. 7.) Defendant Ford understood the 2007 Operations Agreement to have been signed for the purpose of helping to organize the business of The Dramatics and did not believe that he transferred any rights to use the name "The Dramatics" to the LLC. (Ford Aff. ¶ 9.) Beginning on December 4, 2007, Articles of Organization for "Dramatics the Singing Group, LLC" were filed with the Michigan Bureau of Commercial Services, and Plaintiff Reynolds was listed as the LLC's resident agent. (Defs.' Resp. Ex. 6.)

Defendant Ford was unaware that Plaintiff Reynolds had organized another LLC a year later, on December 5, 2008, purporting to have only two members, Mr. Banks and Mr. Reynolds, and filed Articles of Organization and served as resident agent for "The Dramatics LLC." (Defs.' Resp. Exs. 8, 9) (the "2008 Operations Agreement"). It is in part upon this subsequent 2008 Operations Agreement that Plaintiff bases his right to injunctive relief. Defendant Ford states in his affidavit that he never authorized Plaintiff Reynolds to organize a new LLC for the same purpose and with the same assets as the 2007 LLC and believes the formation of the 2008 LLC to have been prohibited by the earlier 2007 Operations Agreement. (Ford Aff. ¶¶ 10-11.)

On February 10, 2009, group members Ron Banks, Plaintiff Larry Reynolds and Willie Ford

6

obtained a trademark, as co-owners, for the word mark "Dramatics the Singing Group" from the United States Patent and Trademark Office. (Pl.'s Mot. Ex. 1.) The mark covered the following goods and services: "Hats, T-shirts, Sweat shirts, Jackets, Scarves, Sweaters, Tuxedo belts, Baseball Caps, Cap visors, Waist belts." *Id.* At the June 18, 2012 hearing on Plaintiff's motion for preliminary injunctive relief, Plaintiff's counsel conceded that no effort has ever been made to cancel the 2009 mark, which is registered jointly to the now-deceased Banks, Plaintiff Reynolds and Defendant Ford.

On April 21, 2010, Sandra Banks applied for a service mark for "The Dramatics," which was registered to her March 6, 2012. (Pl.'s Compl. Ex. 3.) The mark was designated for "Entertainment in the nature of live performances by a musical group," and "for audio and video recordings featuring music and artistic performances; digital music downloadable from the internet." *Id.* Plaintiff has filed a cancellation proceeding in the USPTO, seeking to have Banks's mark cancelled. (Pl.'s Mot. Ex. 8.) Discovery in the USPTO proceeding is scheduled to close December 2, 2012. Both Plaintiff and Defendant are represented by counsel in the cancellation proceeding. (Pl.'s Mot. 8.)

## II. STANDARD OF REVIEW

Plaintiff bears the burden of demonstrating entitlement to preliminary injunctive relief and the burden is substantial. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Such relief will only be granted where "the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). When considering a motion for injunctive relief, the Court must balance the following factors: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief, (3) whether granting the

preliminary injunctive relief would cause substantial harm to others, and (4) whether the public interest would be served by granting the preliminary injunctive relief. "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

III. **ANALYSIS**

    A. **Likelihood of Success on the Merits**

Plaintiff has failed to carry his burden of demonstrating a likelihood of success on the merits. The Court finds that while Plaintiff may ultimately be able to establish some right to use the name "The Dramatics," he has proffered insufficient evidence that he is likely to succeed in establishing that he currently enjoys exclusive rights to use the mark.

Plaintiff proceeds on a theory of trademark infringement. In his motion for preliminary injunctive relief, Plaintiff argues that he is likely to succeed on the merits of this claim based in part upon a February 10, 2009 Registered Mark that he holds as a co-owner with the late Mr. Banks and William Ford. (Pl.s' Mot. Ex. 1, hereinafter the "2009 Trademark".) In his motion, Plaintiff states that the mark was registered by the three co-owners in 2009 "to enable the group to license apparel for sale at their concerts and to further promote *The Dramatics* The Singing Group." (Mot. 5.) However, neither co-owner of the mark (or in the case of the deceased Mr. Banks, the party to whom his ownership interest was conveyed) is a party to this action. The well-accepted rationale requiring the joinder of co-owners of patents in a patent infringement suit also has been found to apply in cases involving trademark infringement:

8

> Courts have held consistently that the owner of allegedly infringed intellectual property rights is a person needed for just adjudication under Rule 19. This general rule applies to trademark actions as well. When ownership of a trademark is the central issue in a case, the trademark owner is a necessary party.

*Golden Temple of Oregon, LLC v. Wai Lana Productions, LLC*, No. 09-902, 2011 WL 6070385, at *2 (Dec. 5, 2011) (internal quotation marks and citations omitted). *See also St. James v. New Prague Area Community Center*, No. 06-1472, 2006 WL 2069197, at *2 (D. Minn. July 26, 2006) ("It is well established, in suits for patent and trademark infringement, that the owner of the patent or trademark is subject to compulsory joinder. Regardless of whether the suit proceeds in patent or trademark, the rationale is the same. Should the patent or trademark be held invalid or unenforceable, the owner will lose the ability to protect that interest. The same analysis applies, where ownership is at issue, to a purported owner."); *Jaguar Cars Ltd. v. Manufactures Des Montres Jaguar*, 196 F.R.D. 306, 308 (E.D. Mich. 2000) (Duggan, J.) (finding that courts that have faced the issue have treated trademark owners as indispensable for Rule 19 purposes, and granting motion to dismiss claims based upon a mark whose owner was not a party); *Earl v. Peverett*, No. 90-5019, 1991 WL 33281, at *1 (S.D.N.Y. March 7, 1991) (finding that failure to serve and join the registered owner of the service mark for a rock and roll band necessitated dismissal of the action, reasoning that it was "pointless to litigate in [the trademark owner's] absence whether plaintiffs or defendants have a superior right to the mark if [the trademark owner's] right is superior to the rights of any parties already joined" in the action). Indeed Mr. Ford, a co-owner of the mark, appears in the case now as a Defendant and contests Plaintiff's rights to use the mark at all. Thus, as pled, it is unlikely that Plaintiff will succeed on the merits of his claim based upon his ownership of the service mark "The

9

Dramatics."[3]

Although Plaintiff's Complaint contains no Count for breach of contract, Plaintiff suggests in his Motion for Preliminary Injunction that the 2008 Operations Agreement executed by himself and the late Mr. Banks in December, 2008, expressly excluded Mr. Ford, and gave Plaintiff and Mr. Banks the sole and exclusive right to use the mark: "In March of 2010, Ron Banks passed away. At that time, pursuant to the "Agreement", Plaintiff because [sic] the sole and exclusive owner of any and all trademarks, service marks, trade names and common law rights to use the name The Dramatics in connection with live musical performances." (Compl. ¶ 39; Pl.'s Mot. Ex. 6, December 5, 2008 Operations Agreement.)

Plaintiff has failed to provide legal or factual support for these allegations. On the contrary, Defendants have produced evidence and sworn testimony that casts the integrity of the 2008 Operations Agreement in grave doubt. There is absolutely no evidence that Mr. Ford ever assigned his interest in the name "The Dramatics" that was found to exist by Judge Ryan in 1973 and confirmed in the 2007 Operations Agreement. Nor is there any evidence that Mr. Ford ever authorized Plaintiff to execute the 2008 Operations Agreement, which clearly affected Mr. Ford's interest in the name "The Dramatics." The 2007 Operations Agreement expressly provides that any

---

[3] Plaintiff has filed a cancellation proceeding in the USPTO seeking to cancel Defendant Bank's 2012 Registration of the mark "The Dramatics." (Pl.'s Compl. Ex. 3, March 6, 2012 Registration of mark "The Dramatics (hereinafter "the 2012 Trademark");" Pl.'s Mot. Ex. 8, Notice of Cancellation Proceedings.) Plaintiff asserts that he is likely to succeed in the cancellation proceeding that he has filed before the USPTO because Defendant Banks obtained her mark based on fraudulent misrepresentations. (Mot. 5.) The issue of whether Defendant Banks engaged in fraudulent misrepresentations to the USPTO in obtaining her registration of the mark in 2012 has no direct bearing on Plaintiff's rights with respect to the mark on which Plaintiff relies to assert his claims of infringement in this suit – a registration on which he is but a co-owner of the mark along with Mr. Ford and the late Mr. Banks.

action performed by a member that is not disclosed to the other members is outside the scope of that Agreement. Mr. Reynolds and Mr. Banks, therefore, had no authority to unilaterally exclude Mr. Ford from the 2008 Operations Agreement, an action clearly not disclosed to all members as required by the 2007 Operations Agreement. Interestingly, while the 2008 Operations Agreement appears to exclude Mr. Ford from the ownership and management of "The Dramatics, LLC," the 2009 registration of the service mark "The Dramatics" by Mr. Banks, Mr. Reynolds and Mr. Ford, post-dated this Agreement. That registration has never been cancelled.

Based upon the findings and conclusions of Judge Ryan in 1973, the affidavit of Mr. Davis from Groovesville Productions and the sworn testimony of Mr. Ford regarding the formation of the 2007 Operations Agreement, the Court cannot conclude that Plaintiff has any significant likelihood of succeeding in establishing an exclusive right to use the name "The Dramatics." "The failure to show a substantial likelihood of success on the merits is usually fatal to a request for preliminary injunctive relief." *Blau v. Prison Health Services, Inc.*, No. 11-CV-1085, 2012 WL 289282, at *5 (W.D. Mich. Jan. 31, 2012) (citing *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000)). This factor weighs heavily against an award of the requested injunctive relief.

### B. Plaintiff Has Failed to Establish Irreparable Harm

Plaintiff's claim of irreparable harm was based in part on certain scheduled concert dates in the month of May, 2012 in California and Nevada that Plaintiff claimed Defendants had attempted to derail. Any claim of irreparable harm based on these past events cannot support a request for prospective injunctive relief. Apart from the claim relating to these past events, Plaintiff makes vague assertions regarding the potential for harm to his reputation caused by Defendants' "counterfeit acts." (Dkt. No. 7, Pl.'s Mot. 6.) This claim is unsupported by any sworn testimony and

11

in fact the "unknown male singers" whom Plaintiff claims "could severely tarnish" Plaintiff's reputation, likely have as good a right, if not a superior right, to use the name "The Dramatics" as Plaintiff. Moreover, in the context of an infringement action, irreparable harm may be shown based on claimed damage to reputation *if* there is finding of infringement. *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 608 (6th Cir. 1991). However, given the Court's conclusion that Plaintiff has little likelihood of success in establishing a present right to exclusive use of the name "The Dramatics," any threat to reputation is entirely speculative and does not support a claim of irreparable harm. *See Ignition Athletic Performance Grp., LLC v. Hantz Soccer U.S.A., LLC*, 245 F. App'x 456, 460 (6th Cir. 2007) (finding that where there is not a likelihood of success on the merits of an infringement claim, irreparable harm to reputation does not follow).

Accordingly, this factor weighs against the award of injunctive relief.

### C.   The Balance of Harms Appears to Favor the Defendants

Based on the evidence presently before the Court, it would appear that Defendants would be equally harmed were the Court to enjoin them from continuing to use the name "The Dramatics," in which they appear to perhaps have a present right at least equal to the Plaintiff's. Accordingly, this factor weighs against an award of the requested injunctive relief.

### D.   The Public Interest

The Court sees no manner in which the public interest would be served by granting Plaintiff the exclusive right to use the name "The Dramatics," when Defendants appear to the Court based on the evidence submitted thus far to have at least as much right to call themselves "The Dramatics" as does Plaintiff. This factor weighs against an award of the request injunctive relief.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's request for injunctive relief. (Dkt. No. 7.) However, the Court will continue in effect the Stand Still Order issued by this Court on May 11, 2012, which prohibits the Plaintiff and each of the Defendants from interfering with or in any way disparaging the other parties' use of the mark "The Dramatics" while this case proceeds. (Dkt. No. 12.)

IT IS SO ORDERED.

*/s/ Paul D. Borman*
Paul D. Borman
United States District Judge

Dated: 6-29-12