UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY REYNOLDS, a/k/a
L.J. REYNOLDS, and LARRY
DEMPS,

Plaintiffs,

Case No. 12-cv-11664

v.

Paul D. Borman
United States District Judge

SANDRA BANKS, WILLIE FORD,
*et al.*,

Defendants.
_________________________________/

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 69) AND STAYING THIS MATTER

On September 5, 2014, the Court held a hearing on Plaintiffs' Motion for Summary Judgment. (ECF No. 69.) Defendants filed a response (ECF No. 71) and Plaintiffs filed a Reply (ECF No. 73). Following the hearing, the Court directed the parties to continue to operate under the Stipulated Standstill Order that this Court entered on May 11, 2012, and to report back to the Court regarding related proceedings in the Wayne County Probate Court.

Having had no contact from the parties since the hearing, the Court now DENIES the Motion for Summary Judgment and STAYS this case pending notification of the outcome of the related proceedings in the Wayne County Probate Court.

**INTRODUCTION**

This action involves competing interests in the name of the rhythm and blues group "The Dramatics." Following the sudden death of Ron Banks, one of the founding members of the group, his widow, Defendant Sandra Banks, began asserting her right to continue to use the name "The Dramatics," applying for and obtaining a service mark for "The Dramatics" in 2010. In this action, Reynolds, a member of The Dramatics, and co-Plaintiff Larry Demps (a former member of The Dramatics) contest Sandra Banks' right and/or interest in the name "The Dramatics" and have filed this action against Banks and Willie Ford (also a former member of The Dramatics) for trademark infringement and breach of contract, essentially accusing both Ms. Banks and Mr. Ford of attempting to establish a rival and counterfeit group using the name "The Dramatics," to the exclusion of both Reynolds and Demps. Ms. Banks and Mr. Ford respond that Reynolds is the actual counterfeit actor and that he is without rights to the name The Dramatics. In this motion for summary judgment, Plaintiffs appear to seek judgment in their favor on the sole issue of whether Ron Banks' rights or interest in the name "The Dramatics," in particular his one-third share in an LLC, passed to his wife upon his death.[1]

[1] Although Plaintiffs style their motion as one for summary judgment, it can only be construed as one for partial summary judgment. The Third Amended Complaint contains eleven counts, several of which are asserted under federal trademark law. The motion does not contain any argument, or even a single citation, to federal law governing trademarks. Nor does the motion discuss or cite to any law on the issue of the formation and validity of the "LLC" agreement, pursuant to which Reynolds claims a right to use the name The Dramatics to the exclusion of Ms. Banks. Rather, the motion appears to ask this Court to make the preliminary determination that Sandra Banks has no right, title or interest to any aspect of her late husband's propriety share in the group "The Dramatics," including apparently any right to claim trademark protection of the name "The Dramatics" for live performances and downloads. As discussed *infra*, these issues appear to be pending, either directly or by implication, in the Wayne County Probate Court proceedings in which Ms. Banks is represented by counsel.

## I. BACKGROUND

The Dramatics are a "legendary soul/pop/rhythm & blues vocal group." Reynolds began performing with The Dramatics as "lead" singer in 1972 or '73. (ECF No. 51, Third Amended Compl. ¶ 3.) Plaintiff Demps was a founding/original member of The Dramatics, credited with suggesting the group's name, who was active with the group until some time in early 1980's. *Id*. ¶¶ 4-6. Defendant Willie Ford also was a member of the group but left The Dramatics some time in 2012. *Id*. ¶ 8. Ron Banks died suddenly on March 4, 2010, while the group, including Reynolds and Ford, was actively performing at various venues around the country.

This is not the first time that there has been litigation over the ownership of The Dramatics name. Defendants offer the December 5, 1973 Findings of Fact and Conclusions of Law issued by former Wayne County Circuit Court Judge Honorable James L. Ryan, in a case in which Defendant in the instant case, Willie Ford, along with Plaintiff Larry Demps and the now-deceased Ron Banks, as members of the group "The Dramatics," sought to enjoin former Dramatics members William Howard and Elbert Wilkins from using the name "The Dramatics." (ECF No. 20, Defs.' Resp., Amended Ex. 4, December 5, 1973 Findings of Fact and Conclusions of Law) ("1973 Opinion"). In his findings of fact and conclusions of law, Judge Ryan found that the five members had formed an unwritten partnership and that the name "The Dramatics," was an asset and property of that partnership. *Id*. at 4. Judge Ryan further found that when Howard and Wilkins withdrew from the group in 1973, the partnership was dissolved by operation of law. *Id*. at 5. Finally, Judge Ryan concluded that: "[U]pon dissolution of the partnership, the title, "The Dramatics," the name sometimes called service mark, "The Dramatics," not having been disposed of upon dissolution, is the property of the partners in common and belongs to each of them with the right to use it in

common, but not to the exclusion of the other partners." *Id*. at 5. Judge Ryan denied the plaintiffs' request for preliminary injunctive relief, which was premised upon a claim to exclusive use of the name "The Dramatics." *Id*. at 6.

As Defendants correctly observe, Plaintiff Reynolds was not a party to the 1973 action and was not adjudged at that time to have any rights in the name "The Dramatics." Defendant Ford, in his Affidavit submitted in response to Plaintiffs' earlier-filed motion for preliminary injunction, explains that after the conclusion of the 1973 lawsuit, he, Ron Banks and Demps entered into an agreement with Howard and Wilkins to buy out the latter two members's interest in the name "The Dramatics." (ECF No. 17, Defs.' Amended Resp. to Prelim. Inj. Mot. Ex. 2, June 11, 2012 Affidavit of Willie Ford ¶ 5.) This version of events is corroborated by the sworn affidavit of Don Davis, who was the former president and owner of Groovesville Production, Inc., an entity that produced musical recordings in the City of Detroit in the 1960's through the 1980's and who produced under contract for "The Dramatics." (ECF No. 19, Defs.' Amended Resp. to Prelim. Inj. Mot. Ex. 5, June 11, 2012 Affidavit of Don Davis ¶¶ 1-3.) Davis states in his affidavit that only Ron Banks, Willie Ford and Larry Demps were under contract with Groovesville as official members of the group and that Plaintiff Reynolds was one of the performers with The Dramatics during this time but was under a separate contract with Groovesville. *Id.* at ¶¶ 5-6.

Ford states in his affidavit that he has never sold or assigned his ownership interest in the name "The Dramatics." (Ford. Aff. ¶ 7.) Mr. Ford testifies in his affidavit that in 2007, he entered into an Operations Agreement with Plaintiff Reynolds and Ron Banks for the purpose of organizing a limited liability company (LLC) to govern the business of The Dramatics. (*Id*. ¶ 8; ECF No. 16, Defs.' Resp. to Prelim. Inj. Ex. 7, November 30, 2007 Operations Agreement (the "2007 Operations

Agreement".) The 2007 Operations Agreement was executed by Plaintiff Reynolds, Defendant Willie Ford and Ronald Banks and provided that "[t]he name The Dramatics will be equally owned and used by each member regardless of who acts as the registering agent." The 2007 Operations Agreement further provides that any action performed by a member that is not disclosed to the other members is action taken outside the scope of the Agreement. (ECF No. 16, Defs.' Resp. to Prelim. Inj. Mot. Ex. 7.) Defendant Ford understood the 2007 Operations Agreement to have been signed for the purpose of helping to organize the business of The Dramatics and did not believe that he transferred any rights to use the name "The Dramatics" to the LLC. (Ford Aff. ¶ 9.) Beginning on December 4, 2007, Articles of Organization for "Dramatics the Singing Group, LLC" were filed with the Michigan Bureau of Commercial Services, and Plaintiff Reynolds was listed as the LLC's resident agent. (ECF No. 16, Defs.' Resp. to Prelim. Inj. Mot. Ex. 6.)

Defendant Ford was unaware that Plaintiff Reynolds organized another LLC a year later, on December 5, 2008, purporting to have only two members, Mr. Banks and Mr. Reynolds, and filed Articles of Organization and served as resident agent for this new LLC, "The Dramatics LLC." (ECF No. 16, Defs.' Resp. to Prelim. Inj. Mot. Exs. 8, 9) (the "2008 Operations Agreement"). It is in part upon this subsequent 2008 Operations Agreement that Plaintiff Reynolds bases his right to exclusive use of the name The Dramatics. Defendant Ford states in his affidavit that he never authorized Plaintiff Reynolds to organize a new LLC for the same purpose and with the same assets as the 2007 LLC and believes the formation of the 2008 LLC to have been prohibited by the earlier 2007 Operations Agreement. (Ford Aff. ¶¶ 10-11.)

On February 10, 2009, group members Ron Banks, Plaintiff Larry Reynolds and Willie Ford obtained a trademark, as co-registrants, for the word mark "Dramatics the Singing Group" from the

United States Patent and Trademark Office. (ECF No. 7, Pl.'s Mot. for Prelim. Inj. Ex. 1.) The mark covered the following goods and services: "Hats, T-shirts, Sweat shirts, Jackets, Scarves, Sweaters, Tuxedo belts, Baseball Caps, Cap visors, Waist belts." *Id*. At the June 18, 2012 hearing on Plaintiff's motion for preliminary injunctive relief, Plaintiffs' counsel conceded that no effort has ever been made to cancel the 2009 mark, which is registered jointly to the now-deceased Banks, Plaintiff Reynolds and Defendant Ford.

On April 21, 2010, after her husband's death and while acting as the Personal Representative of his Estate, Sandra Banks applied for a service mark for "The Dramatics," which was registered to her March 6, 2012. (Pl.'s Compl. Ex. 3.) The mark was designated for "Entertainment in the nature of live performances by a musical group," and "for audio and video recordings featuring music and artistic performances; digital music downloadable from the internet." *Id*. Plaintiff Reynolds has filed a cancellation proceeding in the United States Patent and Trademark Office ('USPTO"), seeking to have Banks's mark cancelled. (Pl.'s Mot. Ex. 8.) Discovery in the USPTO proceeding was scheduled to close December 2, 2012. Both Plaintiff and Defendant appear to have been represented by counsel in the cancellation proceeding. (Pl.'s Mot. 8.)

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after the close of all discovery," unless a different time is set by local rule or court order. Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "Of course, [the moving party] always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Id.*at 324. "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). In doing so, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial. . . . In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it

should be interpreted in a way that allows it to accomplish this purpose." *Celotex*, 477 U.S. at 323-34.

## III. ANALYSIS

Following Judge Ryan's decision in 1973, which was affirmed by the Michigan Court of Appeals on March 12, 1975, *see Ford v. Howard*, 59 Mich. App. 548 (1975), and subsequent to their purchasing the shares of Howard and Wilkins, Plaintiff Demps, Defendant Ford and the now-deceased Ron Banks each held an equal right to use the name The Dramatics, but never to the exclusion of any of the others. Plaintiff Reynolds was not a member of the group at that time and held no interest in the name by virtue of Judge Ryan's decision.

On December 5, 2007, Plaintiff Reynolds acted as the organizer and resident agent of a Michigan Limited Liability Company, "The Dramatics the Singing Group, LLC." Just days before forming this LLC, Reynolds, Ron Banks and Willie Ford signed a November 30, 2007 Operations Agreement for an entity named "The Dramatics LLC." This 2007 Agreement stated that the name The Dramatics was owned equally by the three signatories and that none of the three could act without the consent of the others.

On December 5, 2008, Reynolds again acted as the organizer and resident agent of another Michigan limited liability company named "The Dramatics LLC." This entity had a different December 5, 2008 Operations Agreement which purported to govern the business of that LLC but The Dramatics LLC had only two members: Ron Banks and Reynolds. According to Willie Ford, he had been excluded without his knowledge or consent despite the language of the 2007 Operations Agreement governing the slightly different named LLC "The Dramatics the Singing Group LLC." Both the 2007 and the 2008 Operations Agreements purported to govern the activities of the same

singing group known by all of its members as The Dramatics.

Plaintiff Reynolds originally filed this action claiming that he and Ron Banks were the sole members of The Dramatics LLC and that upon Banks' death Reynolds became the sole member of the LLC and acquired the sole right to use the name The Dramatics to the exclusion of all other persons. His original claims were against Ms. Banks and certain John Does for trademark infringement based upon Ms. Banks' 2010 registration of the mark The Dramatics. Ms. Banks, then represented by counsel, responded that Plaintiff had failed to establish that Willie Ford or Larry Demps had ever transferred or relinquished their rights to the name The Dramatics, relying on Judge Ryan's 1973 Order and the 2007 Operations Agreement to which Ron Banks, Willie Ford and Larry Demps, but not Reynolds, were parties. Ms. Banks further responded that even assuming the validity of The Dramatics LLC formed in 2008 that excluded Willie Ford, Ron Banks' interest in the LLC would be treated as personal property and would pass to his heirs by will or by the laws of intestate succession under the provisions of Mich. Comp. Laws § 450.4504. (ECF No. 16, Defs.' Resp. to Prelim. Inj. Mot. 11-12.) Defendants also noted that Ms. Banks, as the Personal Representative of Ron Banks' Estate, had the authority to register the name The Dramatics with the USPTO. Based upon this evidence, in an earlier Opinion and Order, this Court denied Reynolds' motion for preliminary injunctive relief and continued in effect an earlier-issued Stand Still Order preventing any of the parties from interfering with any other party's use of the name The Dramatics. (ECF No. 23, June 29, 2012 Opinion and Order.)

On July 8, 2013, Reynolds was granted leave to file an Amended Complaint, adding Larry Demps as a Plaintiff and adding several claims including breach of contract and tortious interference with contract. (ECF No. 50, Order Granting Leave to file Amended Complaint.) At present, the

Plaintiffs apparently do not dispute Defendant Ford's right to use the group name for his own commercial and pecuniary purposes but deny that Ms. Banks somehow acquired a similar right by virtue of her husband's passing, and deny that either Ford or Ms. Banks (even assuming she had such a right) would have the right to exclude Reynolds' use of the name.

Defendant Banks states that she would agree to amend her Trademark to include Plaintiff Demps and her co-Defendant Ford but not Plaintiff Reynolds, whom Ms. Banks argues was not an original member of The Dramatics and has no continuing rights to use the name. Ms. Banks also notes that her husband's Estate has been re-opened and includes among its inventory of assets a one-third interest in his LLC membership and in the name "The Dramatics." Ms. Banks is represented by counsel, Norman Richards, in the probate proceedings.

Plaintiffs have apparently shifted their focus for the moment from the alleged trademark violation to an unsupported challenge to Ms. Banks' rights through succession to the name "The Dramatics." Plaintiffs ask the Court in this motion to determine that Ms. Banks has no right to use, nor any proprietary interest in, the name "The Dramatics" because she "has never been a part of the group either as an entertainer or manager." (Mot. 11.) Plaintiffs fail to address however the critical point that Ms. Banks claims a derivative right to use the name which she claims became an asset of her husband's Estate on his death. *See* November 12, 2010 Correspondence from John M. Kamins of Foster Swift Collins & Smith to Reynolds and Ford explaining that Mr. Banks' intellectual property rights in the name "The Dramatics," including his legal rights under the December 5, 2008 Operating Agreement and the U.S. Trademark for DRAMATICS THE SINGING GROUP, are now the property of Mr. Banks' Estate. (ECF No. 59, Defs.' Answer at PgID#61-63.) The probate of Mr. Banks' Estate was, at the time of the hearing on this matter and according to the representations

of the parties, actively proceeding in Wayne County Probate Court before Judge Martin Maher. Listed among the Assets of the Estate are a "1/3 ownership interest in The Dramatics LLC" and a "1/3 ownership interest in The Dramatics the Singing Group LLC." (ECF No. 59, Defs.' Answer to Third Amended Compl. and Counterclaim at PgID#48.) Notably, earlier probate proceedings begun just after Mr. Banks death concluded in September, 2011. According to Plaintiffs, these earlier proceedings closed without Ms. Banks ever listing The Dramatics as an asset or listing ownership interests in the name as an asset. The Estate was reopened on July 31, 2012 and these assets are now listed among the inventory of assets.

Ms. Banks was the personal representative of her husband's Estate when she applied for and received a Trademark on the name "The Dramatics" for live performances, download, etc. Whether this was an authorized act (she applied for and was granted rights to the mark in her own name, not that of the Estate) or whether any intangible rights which Mr. Banks possessed at the time of his death passed to his Estate, are threshold issues that have not been adequately briefed and in any event should be addressed in the first instance in the probate court. Plaintiffs appear to concede that Ms. Banks' claims lie in probate in the first instance when they state that she "seeks to appropriate the right to the name "The Dramatics" on a spurious claim of inheritance as the beneficiary of Ron Banks' estate." (ECF No. 69, Pls.' Mot. 3.) Accordingly, the Court will deny Plaintiffs' motion for summary judgment and will stay this action pending the outcome of those proceedings.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES the Plaintiffs' Motion for Summary Judgment (ECF No. 69) and STAYS this matter pending the outcome of the related Wayne County Probate Proceedings. This matter will be reopened only upon a well-supported motion to reopen

proceedings.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: February 12, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 12, 2015.

s/Deborah Tofil
Case Manager